IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JESUS BEJINES-GONZALEZ, ABRAHAAM SAYAGO-HERNANDEZ and all others similarly situated, | : : : : |
| Plaintiffs, | : : : |
| v. | : CIVIL ACT. NO.: : : RULE 23 CLASS |
| SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON FARMS MEX, L.P.; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; WK MEX PROPERTIES, L.P.; and WKW, LLC, | : : : : : : : : : |
| Defendants. | : : |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.          Plaintiffs are agricultural workers employed by Defendants during the past six years to work at Defendants' operations in and around Colquitt and Cook Counties, Georgia. Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA"), under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), under Georgia contract law, and the common law of fraud.

1

2.         Defendants violated the FLSA by willfully failing to pay at least the required hourly wage for every compensable hour of labor performed in a workweek (including by failing to reimburse their employment-related expenses as required by law) to each Plaintiff, to each individual who may opt into this action as allowed by the FLSA ("Opt-In Plaintiff"), and to other similarly-situated workers Defendants further violated the FLSA by willfully failing to pay each Plaintiff, Opt-In Plaintiff, and other similarly-situated worker employed in Defendants' packing shed operations overtime wages for hours worked in excess of forty hours in a workweek.

3.         Defendants breached Plaintiffs' employment contracts by failing to pay the contractually-promised wages, including those required by the FLSA, for all hours worked, and by failing to reimburse Plaintiffs' employment-related expenses including travel expenses.

4.         To remedy these and other legal violations, Plaintiffs and Opt-In Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, reasonable attorneys' fees and costs, and pre and post-judgment interest.

## II. JURISDICTION AND VENUE

5.         This Court has jurisdiction of this action pursuant to:

    a.         28 U.S.C. § 1331 (Federal Question);

    b.         29 U.S.C. § 1337 (Interstate Commerce);

    c.         29 U.S.C. § 216(b) (FLSA);

    d.         29 U.S.C. § 1854 (a) (AWPA); and

    e.         28 U.S.C. § 1367 (Supplemental).

6.         This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4 because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside and do business there.

### III. PARTIES

8.        Plaintiff JESUS BEJINES-GONZALEZ worked for Defendants in the 2013, 2014, 2015, 2016, 2017 and 2018 seasons.

9.        Plaintiff ABRAHAAM SAYAGO-HERNANDEZ worked for Defendants in the 2013, 2014, 2015, 2016 and 2017 seasons.

10.       At all times relevant to this complaint, Plaintiff Bejines-Gonzalez was a migrant agricultural worker within the meaning of the AWPA.

11.       Plaintiff Bejines-Gonzalez resided in trailer-park housing owned or controlled by Defendants.

12.       Seasonally, Plaintiff Sayago-Hernandez and others similarly-situated were H-2A agricultural guest workers admitted into the United States to work under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0-655.185

13.       During January- March of each year he worked, Plaintiff Sayago-Hernandez was a migrant agricultural worker within the meaning of the AWPA.

14.       Plaintiffs' FLSA consent forms are attached as Exhibit A to this Complaint.

15.       At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Farms Mex, L.P. ("Hamilton Farms Mex"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), WK Mex Properties, L.P. ("WK Mex"), and WKW, LLC ("WKW"), collectively the "Corporate

3

Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

16.        Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley and is a member-manager or partner of the other Corporate Defendants.  He may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

17.        Defendant Kent Hamilton is the day-to-day manager of all the Corporate Defendants.

18.        Defendant Kent Hamilton exercises management, ownership, and financial control over all of the Corporate Defendants.

19.        Defendant Kent Hamilton directs labor relations at the Corporate Defendants and has the power to hire, fire, and alter the terms and conditions of employment for all employees of all of the entities.

20.        The Plaintiffs, Opt-in Plaintiffs, and other similarly-situated were dependent for their wages as a matter of economic reality on Defendant Kent Hamilton and the Corporate Defendants.

21.        Defendant Hamilton Growers may be served with process through its Chief Executive Officer, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

22.        Defendant Southern Valley may be served with process through its registered agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

23.        Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, WK

Holdings, WK Mex, and WKW, LLC may be served with process through their registered agent, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

24.     The four Limited Partnership Defendants, Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex ("Limited Partnership Defendants"), are comprised of General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and Defendant Kent Hamilton through their respective trusts.

25.     The two Limited Liability Corporation Defendants, WK Holdings and WKW, ("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant Kent Hamilton Trust.

26.     Defendant Hamilton Growers, the Limited Partnership Defendants, and Defendant WKW solely provide services for Defendant Southern Valley.

27.     Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

28.     In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex Properties, exercises this power to conduct business, and is responsible for management, employee relations, and bookkeeping.

29.     Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

30.     The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

31.        Defendant Hamilton Farms Mex leases farming equipment to Defendant Southern Valley for the cultivation of produce.

32.        Defendant Hamilton Produce leases farm equipment and refrigerated containers to Defendants Hamilton Growers and Southern Valley for the cultivation and storage of produce.

33.        Defendant Hamilton Produce does not invoice Defendants Hamilton Growers or Southern Valley for the leased equipment and containers and is merely paid as obligations arise or come due. Defendant Hamilton Produce solely provides equipment and containers to Defendants Hamilton Growers and Southern Valley.

34.        Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

35.        The majority of Defendant Kenda Properties' income is from land rent.

36.        Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

37.        Defendant WK Mex sells future produce paid for in advance exclusively to Defendant Southern Valley.

38.        The management of Southern Valley directs WK Mex to operate in synch and seamlessly with Southern Valley.

39.        Defendant WKW provides transportation services to Defendant Southern Valley.

40.        Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

41.        The transportation services provided by WKW form an integral part of the

6

business of Defendant Southern Valley.

42.          The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

43.          Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

44.          Defendant WK Holdings controls the property of the Limited Partnership Defendants and Defendant WKW and is authorized to sign loans on their behalf.

45.          Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

46.          The Corporate Defendants form part of the same enterprise and are economically dependent on one another for their ongoing business.  Defendants Hamilton Growers and WK Mex supply the crops that Defendant Southern Valley markets and ships; Defendants Kenda Properties, Hamilton Farms Mex, and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley; WKW provides transportation services to Defendant Southern Valley; and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

47.          Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants

are also based.

48.　　　　Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

49.　　　　Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, WK Holdings, Hamilton Farms Mex, and WK Mex.

50.　　　　The Corporate Defendants act together to obtain financing and transact business.

51.　　　　In all years relevant to this action, the Corporate Defendants collectively had annual gross sales in excess of five hundred thousand dollars ($500,000).

52.　　　　At least three of the Corporate Defendants, Hamilton Growers, WKW, and Southern Valley have jointly insured themselves against employment practices in a policy that extends to those other companies considered subsidiaries or joint ventures.

53.　　　　The Corporate Defendants report their business results on consolidated financial statements, reporting the business results all together and do not prepare individual financial statements for reporting outside the companies.

54.　　　　Defendants Hamilton Growers and WK Holdings effectively have no assets and Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are dependent for their continued existence on Defendants Kent Hamilton and Southern Valley.

55.　　　　Defendants Hamilton Growers and WK Mex coordinate all of their activities with Defendant Southern Valley, and Defendant Southern Valley directs when they are to harvest crops, which fields are to be harvested, and how much is to be harvested.

56.　　　　The Corporate Defendants rely on each other to grow, pack and sell fruit and

vegetable commodities.

57.        The Corporate Defendants process all shipments of produce to any one of the entities using the same "Receiving Record" form.

58.        The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities, and constitute one economic enterprise.

59.        At all times relevant to this action, Defendants have been employers of Plaintiffs and other similarly-situated workers employed under the terms of the 2013, 2014 and 2015, 2016, 2017 and 2018 job orders as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), because they had places of business in the U.S. and means by which they could be contacted for employment, had employer relationships with the Plaintiffs and other similarly-situated workers, and had valid Federal Employer Identification Numbers.

60.        At all times relevant to this action, Kent Hamilton, as a principal and agent for all of the Corporate Defendants, signed the job orders on his own behalf and on behalf of the Corporate Defendants.

61.        At all times relevant to this action, Defendants have been employers of the Plaintiffs, Opt-In Plaintiffs, and others similarly situated within the meaning of the FLSA and the AWPA because Plaintiffs and other similarly-situated were dependent on Defendants as a matter of economic reality as detailed in the preceding paragraphs.

62.        At all times relevant to this action, Defendants were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

### IV. THE H-2A PROGRAM

63.     The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

64.     Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

65.     The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for Plaintiffs and others similarly situated. *See* 20 C.F.R. § 655.103(b) (definition of "work contract").

66.     The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and the contracts contained a promise to "comply with applicable Federal, State and local law and regulations" including the FLSA. *See* 20 C.F.R. § 655.135(e).

67.     In each year relevant to this action, Defendant Hamilton Growers submitted job orders to the U.S. DOL.

68.     The 2013, 2014, 2015, 2016, 2017, and 2018  job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton.

69.        In the employment contracts, Defendants promised that each worker would earn at least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period.

70.        Plaintiffs' employment contracts promised to pay the applicable AEWR, which was $9.78 in 2013, $10.00 in 2014 and 2015, $10.59 in 2016, $10.62 in 2017, and $10.95 in 2018.

71.        In promising to pay the federally-mandated AEWR, Defendants also promised to pay that wage free and clear without deduction of items for the employer's benefit or without reducing an employee's wages by shifting costs to their employees as incorporated into the parties working arrangement and the written job order and as detailed in federal regulations at 20 C.F.R. § 655.122(p)(2).

72.        In the employment contracts Defendants also promised that workers would be paid their transportation expenses and subsistence expense for travel from the places where the workers have come and return travel each year as required by 20 C.F.R. § 655.122(h).

73.        The minimum daily subsistence amounts were published in the Federal Register and were incorporated into Plaintiffs' and other similarly-situated workers' contracts.

74.        With the exception of changes in the dates of employment, and annual changes in the wage rates and subsistence amounts offered, the employment contracts created by the job orders were nearly identical to each other.

## V.  STATEMENT OF FACTS

75.        In each year relevant to this Complaint, Defendants imported H-2A workers under job order contracts to plant, harvest, and pack produce.

11

76.        Defendant Hamilton Growers filed a job order in 2013, GA 8074274, proposing to employ 76 agricultural workers from March 16, 2013, through December 31, 2013.

77.        Defendant Hamilton Growers filed a second job order in 2013, GA 8076591, proposing to employ 200 agricultural workers from April 1, 2013, through December 31, 2013.

78.        Defendant Hamilton Growers filed a third job order in 2013, GA 8082253, proposing to employ 329 agricultural workers from May 1, 2013, through December 31, 2013.

79.        Plaintiffs and others similarly-situated were employed under the terms of a 2013 job order listed above.

80.        Defendant Hamilton Growers filed five job orders in 2014:

    a.    A job order with employment dates of March 1, 2014 through December 31, 2014 for twenty-nine workers under the job title "Farm Workers";

    b.    A job order with employment dates of April 1, 2014 through December 31, 2014 for two hundred twenty-four workers under the job title "Farm Workers";

    c.    A job order with employment dates of May 6, 2014 through December 31, 2014 for two hundred and fifteen workers under the job title "Farm Workers";

    d.    A job order with employment dates of April 22, 2014 through July 15, 2014 for seventy-nine workers under the job title "Farm Workers";

    e.    And a job order with employment dates of September 2, 2014 through December 5, 2014 for eighty-three workers with the job title "Farm Workers."

81.        Plaintiffs and others similarly-situated were employed under the terms of a 2014 job order listed above.

82.        Defendant Hamilton Growers filed four 2015 job orders:

a.   A job order with employment dates of March 2, 2015 through December 31, 2015 for one-hundred twenty-nine workers under the job title "Farm Workers";

b.   A job order with employment dates of March 1, 2015 through December 31, 2015 for eighty-three workers under the job title "Farm Workers";

c.   A job order with employment dates of April 1, 2015 through December 31, 2015 for one hundred workers under the job title "Farm Workers";

d.   A job order with employment dates of May 1, 2015 through December 31, 2015 for three hundred sixty-nine workers under the job title "Farm Workers";

83.   Plaintiffs and others similarly-situated were employed under the terms of a 2015 job order listed above.

84.   Defendant Hamilton Growers filed three 2016 job orders:

a.   A job order with employment dates of March 1, 2016 through December 31, 2016 for 145 workers under the job title "Farm Workers";

b.   A job order with employment dates of April 1, 2016 through December 31, 2016 for 150 workers under the job title "Farm Workers"; and

c.   A job order with employment dates of May 2, 2016 through December 31, 2016 for 422 workers under the job title "Farm Workers."

85.   Plaintiffs and others similarly-situated were employed under the terms of a 2016 job order listed above.

86.   Defendant Hamilton Growers filed three 2017 job orders:

a.   A job order with employment dates of March 1, 2017 through December 31, 2017 for 200 workers under the job title "Farm Workers";

      b.      A job order with employment dates of April 3, 2017 through December 31, 2017 for 200 workers under the job title "Farm Workers"; and

      c.      A job order with employment dates of May 1, 2017 through December 31, 2017 for 400 workers under the job title "Farm Workers."

87.    Plaintiffs and others similarly-situated were employed under the terms of a 2017 job order listed above.

88.    Defendant Hamilton Growers filed three 2018 job orders:

      a.      A job order with employment dates of March 1, 2018 through December 31, 2018 for 235 workers under the job title "Farm Workers";

      b.      A job order with employment dates of March 10, 2018 through December 31, 2018 for 90 workers under the job title "Farm Workers"; and

      c.      A job order with employment dates of April 2, 2018 through December 31, 2018 for 131 workers under the job title "Farm Workers".

89.    Plaintiff Bejines-Gonzalez and others similarly-situated were employed under the terms of a 2018 job order listed above.

<u>Recruitment, Hiring, and Expenses of Plaintiffs</u>

90.    In each year between 2013 and 2018, Defendants recruited the Plaintiffs, Opt-in Plaintiffs, and other similarly-situated workers in Mexico through a network of Mexico-based recruiters and through Defendants' U.S.-based agents and supervisors.

91.    Defendants through these recruiters and agents made employment offers to the Plaintiffs, Opt-in Plaintiffs and others similarly-situated to plant, harvest, and pack produce in Georgia.

92.        The recruiters were directed by Defendants' U.S.-based supervisors, Fermin

Palomares, Brenda Palomares, and their family members.

93.        Plaintiff Sayago-Hernandez and other similarly-situated workers incurred various

immigration and travel-related expenses in order to come to work for Defendants in Georgia.

94.        In the years 2013 through 2015, Plaintiff Sayago-Hernandez and other similarly-

situated workers paid visa and processing fees in excess of $150 per season in each season that

they obtained H-2A visas to work for Defendants.

95.        In order to comply with the Defendants' hiring processes, Plaintiff Sayago-

Hernandez, Opt-in Plaintiffs, and other similarly-situated workers traveled, at their own expense

to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interviews necessary

to obtain H-2A visas.

96.        Plaintiffs, Opt-in Plaintiffs, and other similarly-situated workers then incurred

further expenses in connection with their work for Defendants.   They paid their own lodging and

subsistence expenses in Monterrey, Mexico while they completed visa application forms,

attended consular interviews, and waited for their visa applications to be processed and for their

visas to be issued.

97.        Following the issuance of the H-2A visas, Plaintiffs, Opt-in Plaintiffs, and other

similarly-situated workers boarded buses and in the years 2013 through at least the end of 2015

paid their own travel expenses from Monterrey, Mexico, or Nuevo Laredo, Mexico, to

Defendants' operations in Georgia.  These travel expenses  exceeded $150.

98.        For each year in which they obtained an H-2A visa, Plaintiffs, Opt-in Plaintiffs,

and others similarly-situated each paid a $6 fee for the issuance of the Customs and Border

Patrol Form I-94 required to enter the U.S.

15

99.         Plaintiffs, Opt-in Plaintiffs, and others similarly-situated were also required to pay their own lodging and subsistence expenses during their return journey.

100.        The expenditures set out in paragraphs 93 through 99 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

101.        The expenditures described above were made before receipt of the workers' first paychecks in each contract period in which they worked or subsequent to their final paycheck.

102.        Defendants failed to adequately reimburse Plaintiffs, Opt-in Plaintiffs, and other similarly-situated workers as required by law during the first and final workweeks for the costs described above, resulting in these workers' first and final week's wages falling well below the FLSA and AEWR minimum wage.

103.        Defendants did not reimburse Plaintiffs, Opt-in Plaintiffs, and other similarly-situated workers at the 50 percent point of these workers' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed, as was required by their employment contracts.

104.        As a condition of continued employment, Plaintiff Sayago-Hernandez was required each season to remain working for Defendants and to only return to Mexico, at his supervisor's direction, shortly before his visa appointment. Plaintiff Sayago-Hernandez's return travel was not paid for or reimbursed by Defendants unlawfully reducing Plaintiff's earnings below the federal and contractual minimums.

105.        On information and belief, others similarly situated were also required to incur identical return travel expenses without reimbursement.

<u>Packing Shed Work</u>

106.        Upon information and belief, during the 2013, 2014, 2015, 2016, 2017 and 2018 seasons, Defendants purchased significant quantities of produce from other producers ("outside produce").  This outside produce was re-packed in Defendants' packing shed for distribution.

107.        Plaintiffs Bejines-Gonzalez and Sayago-Hernandez, Opt-in Plaintiffs, and others similarly-situated worked upon outside produce in Defendants' packing sheds during the seasons they worked.

108.        The Plaintiffs as well as the Opt-in Plaintiffs and others similarly-situated, regularly worked in the Defendants' packing sheds for more than forty hours in a workweek.

109.        The Plaintiffs as well as the Opt-in Plaintiffs and others similarly-situated, did not receive one and a half times their regular rate of pay for all hours above forty worked during a workweek in Defendants' packing sheds.

110.        Defendants were on notice of their FLSA obligations due in part to prior litigation and due to notices and correspondence they had received.

111.        Defendant Hamilton Growers was on notice of its duty to investigate its compliance with the Fair Labor Standards Act due to prior suits in 1998, 2003, and 2012.

112.        Defendants knew of or showed reckless disregard for their FLSA obligations by failing to fully reimburse Plaintiffs, Opt-in Plaintiffs, and other similarly-situated workers for expenses incurred for Defendants' benefit and by failing to pay overtime for hours worked in excess of forty while packing outside produce.

FLSA COLLECTIVE ALLEGATIONS

113.        Plaintiffs brings their FLSA claims on behalf of themselves and all other similarly-situated workers who may opt in to this action pursuant to 29 U.S.C. § 216(b) and worked for Defendants in the preceding three years.

17

114.          Plaintiffs and the other similarly-situated workers were subject to the same

policies and practices of Defendants regarding wages and reimbursement as detailed above, and

were paid in the same manner as the Plaintiffs.  Specifically, Defendants failed to pay the

Plaintiffs and other similarly-situated workers as required by the FLSA, 29 U.S.C. § 201 et seq.

115.          Plaintiffs are currently unaware of the identities of all of the employees who

would be members of the FLSA opt-in class, but this information is readily ascertainable from

Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list –

including last known addresses, telephone numbers, and email addresses if known – of all

individuals who worked for Defendants as H-2A workers and/or as packing shed workers in the

preceding three years.

## RULE 23 CLASS ALLEGATIONS

116.          The claims set forth in Counts III, IV and V are brought by the Plaintiffs,

specified in those counts, on behalf of themselves and all other similarly-situated persons

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

117.          The Plaintiffs seek to represent in Count III a class consisting of all H-2A

temporary foreign workers who were employed pursuant to the job orders filed by Defendants

for the 2013 thorough 2018 calendar years with a subclass of those employed in the packing

shed.

118.          The Plaintiffs seek to represent in Count IV a class consisting of all non-H2A

workers who were employed in Defendants' packing shed in positions covered by the terms of

an H-2A job order with a sub-class of those who were charged for housing by Defendants or

Defendants' supervisory employees or agents for the years 2013-2018.

119.        The Plaintiffs seek to represent in Count V a class consisting of all workers who were employed in Defendants' packing shed in positions covered by the terms of an H-2A job order during the January through March time period of each season for the years 2016-2018.

120.        The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the classes is known only to the Defendants.  However the class for Count III is believed to consist of at least 200 individuals. The class in Count IV is believed to consist of in excess of 30 individuals.  The class in Count V is believed to consist in excess of 50 individuals. All classes are comprised primarily of indigent foreign workers from Mexico.  The great majority of class members are not fluent in English and are unfamiliar with the American judicial system.  The small size of the individual claims and the indigence of the class members makes the maintenance of separate actions by class members economically infeasible.

121.        There are questions of law and fact common to the class including whether Defendants failed to reimburse workers for their expenses in coming to work for Defendants; whether Defendants failed to comply with federal wage laws as contractually promised; whether Defendants failed to provide wage statements with contractually promised wage rates; whether Defendants provided wage statements that failed to contain information on hours and deductions as required by H-2A regulations; whether Defendants charged non-H2A workers for residing in housing facilities operated by Defendants; and whether Defendants misrepresented the work period to lower wages.

122.        The claims of the Plaintiffs are typical of the class members and predominate over claims affecting only individual class members.

123.        The Plaintiffs have the same interests as the class members and will fairly and

adequately represent the interests of the class.

## COUNT I

### FAIR LABOR STANDARDS ACT – MINIMUM WAGE

124.        Plaintiffs incorporate each of the allegations contained in paragraphs 1 through

115 above by reference.

125.        This Count sets forth a claim by Plaintiff Sayago-Hernandez and the Opt-in

Plaintiffs for damages for Defendants' violations of the minimum wage provisions of the FLSA

pursuant to 29 U.S.C. § 216(b).

126.        Plaintiffs Sayago-Hernandez asserts this claim for the 2016 and 2017 seasons and

the Opt-in Plaintiffs assert this claim for the 2016, 2017, and 2018 seasons.

127.        As detailed above, Defendants failed to pay Plaintiffs and the Opt-in Plaintiffs at

least the required average minimum hourly wage for every compensable hour of labor performed

in a workweek, as required by 29 U.S.C. § 206(a).

128.        The violations of the FLSA resulted, in part, from Defendants' failure to

reimburse expenses as detailed in paragraphs 95 through 100 above, which Plaintiffs and the

Opt-in Plaintiffs incurred primarily for the benefit or convenience of Defendants prior to their

first week of work or after their last week of work. When these expenses were subtracted from

the Plaintiffs' and Opt-in Plaintiffs' first week's pay and/or last week's pay, as required by law,

their earnings fell well below the required average minimum hourly wage for that pay period.

129.        Defendants' violations set out in this Count were willful within the meaning of

FLSA as Defendants had knowledge of their FLSA obligations and failed to comply with them.

130.        Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA

set forth in this Count, Plaintiffs and the Opt-in Plaintiffs are entitled to recover the amount of

their unpaid wages and an equal amount as liquidated damages for each workweek in which they

were suffered or permitted to work at Defendants' operations and during which they earned less

than the applicable minimum wage.

131.        Plaintiffs and the Opt-in Plaintiffs also seek, and are entitled to, reasonable

attorneys' fees incurred by their counsel and costs of Court pursuant to 29 U.S.C. § 216(b).

## COUNT II

## FAIR LABOR STANDARDS ACT – OVERTIME

132.        Plaintiffs incorporate each of the allegations contained in paragraphs 1 through

115 above by reference.

133.        This Count sets forth a claim by Plaintiffs and the Opt-in Plaintiffs for declaratory

relief and damages for Defendants' violations of the overtime provision of the FLSA, pursuant to

29 U.S.C. § 216(b).

134.        Plaintiffs Bejines-Gonzalez, Sayago-Hernandez, and  the Opt-in Plaintiffs

employed in Defendants' produce packing and shipping operations assert this claim for each

season they worked in the years 2016,  2017, and 2018.

135.        The Plaintiffs and the Opt-in Plaintiffs employed in Defendants' produce packing

operations worked long hours for Defendants without receiving the protections of the maximum

hours provision of the FLSA, 29 U.S.C. § 207.

136.        Defendants employed the Plaintiffs and the Opt-in Plaintiffs in their packing

operations to process and pack outside produce in workweeks when Plaintiffs and the Opt-in

Plaintiffs were suffered or permitted to work more than 40 hours, without provision of one and a half times their regular rate of pay for those hours worked in excess of 40 in a workweek.

137.         Defendants violated Plaintiffs and the Opt-in Plaintiffs rights by employing them for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of such hours at a rate not less than one and a half times the regular rate (150% of regular rate) at which they were employed, as required by 29 U.S.C. § 207.

138.         These violations also occurred, in part, by unreimbursed expenses for travel, subsistence or for housing, expenses which were properly Defendants' business expenses.  These unreimbursed expenses operated to reduce the wages of Plaintiffs and others similarly situated below the FLSA mandated amounts.

139.         Defendants had been investigated by the United States Department of Labor for violations of the overtime provisions of the Fair Labor Standards Act and were aware of the requirement to pay overtime to packing shed workers who packed or re-packed outside produce.

140.         Defendants' violations as set forth in this Count were willful within the meaning of the FLSA.

141.         As a result of Defendants' violations of the FLSA, each of the Plaintiffs and the Opt-in Plaintiffs are entitled to recover the amount of their unpaid overtime wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).

142.         Plaintiffs and the Opt-in Plaintiffs also seek, and are entitled to, reasonable attorneys' fees incurred by their counsel and costs of Court pursuant to 29 U.S.C. § 216(b).

## COUNT III

### BREACH OF CONTRACT

143.        Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 123 above by reference.

144.        This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the rate of pay provisions, transportation provisions, and assurances provision contained in Plaintiffs' employment contracts, including the terms set forth in paragraph 69 above, which created a contractual promise to pay Plaintiffs and others similarly situated the highest of the applicable FLSA wage or AEWR for each compensable hour of work in a workweek and which promised transportation and subsistence from the place from which the worker came.

145.        This claim is brought by Plaintiffs on behalf of themselves and others similarly-situated pursuant to Fed. R. Civ. P. 23(b)(3).

146.        Plaintiffs Bejines-Gonzalez and others similarly-situated assert this claim for the 2013, 2014, 2015, 2016, 2017, and 2018 seasons, Plaintiff Sayago-Hernandez asserts this claim for the 2014, 2015, 2016 and 2017 seasons.

147.        Defendants, through their agents, offered employment on the terms and conditions set out in the 2013 – 2018 job orders as described in paragraphs 76 –88 above.

148.        The Plaintiffs and others similarly-situated accepted Defendants' offers.

149.        Defendants breached their H-2A employment contracts with the Plaintiffs and others similarly-situated by failing to pay them at least the higher of the applicable FLSA or AEWR wage for each compensable hour of work in a workweek, as set forth in paragraphs 69-71 above.

150.        Defendants breach included failing to reimburse travel and subsistence expenses incurred prior to the first work week or after the last work week in each season.

151.        Defendants also breached their H-2A employment contracts with the Plaintiff Sayago-Hernandez and others similarly-situated by failing to reimburse them, at the 50 percent point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

152.        Defendants breached their obligation to provide return transportation as required by the contract's incorporation of the federal regulatory requirement found at 20 C.F.R. § 655.122(o)(1), which requires that the employer "return the worker, at the employer's expense, to the place from which the worker (disregarding intervening employment) came to work for the employer[.]"

153.        As a direct consequence of Defendants' breaches as set forth in this Count, the Plaintiffs and others similarly-situated have suffered damages.

154.        Defendants are liable to the Plaintiffs and a class of similarly-situated individuals for the damages that arose naturally and according to the usual course of things from Defendants' breaches as set forth in this Count, pursuant to federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages and reimbursement amounts, damages arising from the delay, and prejudgment interest.

## COUNT IV

## AGRICULTURAL WORKER PROTECTION ACT

155.        This count sets for a claim under the Agricultural Worker Protection Act for breach of the parties working arrangement.

156.        Plaintiff Bejines-Gonzalez and others similarly-situated bring this claim for the

2013, 2014, 2015, 2016, 2017 and 2018 seasons on behalf of himself and others pursuant to Fed.

R. Civ. P. 23(b)(3).

157.        Plaintiff Sayago-Hernandez and others similarly-situated bring this claim for the

2014, 2015, 2016, 2017 and for those similarly situated who worked in the 2018 seasons for the

time periods in which they were required to work after expiration of the H-2A job order—

typically from January through March of each year.

158.        Plaintiff Bejines-Gonzalez is a migrant agricultural worker who resided in one of

Defendants' trailer park labor camps.

159.        Plaintiff Bejines-Gonzalez was employed in equipment operation and packing

shed duties alongside H-2A workers.

160.        Plaintiff Bejines-Gonzalez and other similarly-situated workers performed work

which was the same as work included with the contracts applicable to H-2A workers during the

same time period.

161.        Plaintiff Bejines-Gonzalez, Plaintiff Sayago-Hernandez, and others similarly

situated assert this claims for violations of the wage payment requirements of the AWPA, 29

U.S.C. § 1822(a) for Defendants' failure to to pay Plaintiffs Bejines-Gonzalez, Sayago-

Hernandez and others similarly-situated all wages owed when due.

162.        Plaintiff Bejines-Gonzalez also asserts violations of the record keeping

requirements of the AWPA, 29 U.S.C. § 1821(d).   Defendants provided incomplete and

incorrect wage statements and failed to record all deductions taken from wages and the reasons

for those deductions.

25

163.        Defendants further violated the AWPA by failing to pay Plaintiff Bejines-Gonzalez, Plaintiff Sayago-Hernandez as detailed in paragraph 69 through 73, and others similarly-situated their wages as required by the H-2A contract, H-2A program rules, and/or the FLSA including overtime wages for packing and loading or unloading work which was non-exempt from federal overtime rules.

164.        Plaintiff Sayago-Hernandez was supervised and reported to Defendants' supervisors, while employed as a migrant agricultural worker, although he was paid through an intermediary Defendants arranged.

165.        The parties had a working arrangement which was contained in the applicable job order as detailed in paragraphs 64 to 89.

166.        Defendants, without adequate justification, violated the working arrangement when they lowered Plaintiffs pay, and others similarly situated, to between $7.25 and $8.50 per hour although Defendants had requested and continued to employ or did employ H-2A workers in their existing positions.

167.        Defendants actions violated the working arrangements provision of the AWPA found at 29 U.S.C. § 1821(c) for which Plaintiffs are entitled to their actual or statutory damages whichever is greater.

168.        Defendants also violated the AWPA by collecting or allowing to be collected, through their agents, housing charges that unlawfully reduced the wages of Plaintiff Bejines-Gonzalez and others similarly-situated. These housing deductions were undisclosed in the H-2A contract, went to persons affiliated with Defendants, reduced wages for Plaintiff Bejines-Gonzalez and others similarly-situated and violated the working arrangement obligation made in the written contract, and required by federal regulation, to provide housing at no cost to those

26

"who are not reasonably able to return to their residence within the same day," 20 C.F.R. § 655.122(d)(1).

169.       Defendants also violated the AWPA working arrangement by failing to provide return travel to Plaintiff Sayago-Hernandez and others similarly situated in breach of the existing working arrangement formed by the H-2A job order contract.

170.       Defendants are liable to Plaintiffs Bejines-Gonzalez, Sayago-Hernandez and a class of similarly situated non-H2A workers for the unpaid wages.

171.       Pursuant to 29 U.S.C. § 1854(c), as a result of Defendants' violations of the AWPA set forth in this Count, the Plaintiffs are entitled to recover statutory damages of up to $500 per Plaintiff per violation or the amount of their actual damages.

## COUNT V

### FRAUD

172.       This count sets for a claim under the common law of fraud on behalf of Plaintiffs Bejines-Gonzalez, Sayago-Hernandez and a class of others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3) for Defendants' fraudulent misrepresentations to the government to procure H-2A visas for the 2015 through 2018 seasons.

173.       For all crop seasons at issue, Defendants procured H-2A workers through submission of clearance orders and petition to import alien workers.

174.       Each clearance order and petition represented to the government that the position was one for seasonal need and that the need ended December 31 of each applicable year.

175.       These representations were made in the job orders identified in paragraphs 76 to 88.

176.        The false representations included those contained in the "Period of Employment" section of the job orders identified above and the claim that the nature of the need was "Seasonal".

177.        The representations were required to be made to the government for the protection of U.S. and H-2A workers.

178.        Defendants used H-2A workers, including Plaintiff Sayago-Hernandez as laborers in positions that operated year around.

179.        Defendants knew their representations to the government were false when made.

180.        Defendants made their representation with the intention to induce the government to rely on the representation and approve the petitions for alien workers.

181.        The government did in fact rely on the representations and approved the petitions for alien workers in each applicable season.

182.        Plaintiffs Bejines-Gonzalez and Sayago-Hernandez and a class of similarly-situated individuals are in a special class of individuals who were harmed by Defendants representations.  Plaintiffs and others similarly-situated relied upon the lawful operation of the H-2A program, of which Defendants' false representations were a part, to their detriment.

183.        Plaintiffs and others similarly-situated were harmed as their pay was reduced below the government mandated AEWR during the time that Defendants had falsely represented that the seasonal need had ended.

184.        Plaintiffs are entitled to damages for the harm caused them by Defendants fraudulent misstatement to the government.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)  Certify this case as a class action in accordance with Fed. R. Civ. P. 23(b)(3) with respect to Counts III and IV;

(b)  Under Count I:

1.  Declare that Defendants have willfully violated the FLSA as specified in in Count I above;

2.  Declare this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into the action;

3.  Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Opt-In Plaintiff in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

4.  Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

(c)  Under Count II:

1.  Declare that Defendants have willfully violated the FLSA as specified in Count II;

2.  Declare this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into the action;

3.  Grant judgment against Defendants jointly and severally, and in favor of each Plaintiff and Opt-in Plaintiff in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

4.  Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

(d)  Under Count III:

1.      Declare that Defendants have breached their employment contracts with Plaintiffs and others similarly-situated as specified in Count III;

2.      Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and the members of the class, in the amount of their damages that arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(e)     Under Count IV:

1.      Declare that Defendants have violated the Migrant & Seasonal Agricultural Worker Protection Act as described above;

2.      Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff Bejines-Gonzalez, Sayago-Hernandez and the members of the class, in the amount of their actual or statutory damages for Defendants breach of the (i) wage payment; (ii)  record keeping; and  (iii) working arrangement provisions of the AWPA.

(f)     Under Count V:

1.      Declare that Defendants representations were fraudulent as described above;

2.      Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs Bejines-Gonzalez, Sayago-Hernandez and the members of the sub-class, in the amount of wages owed to each individual at the contractual hourly rate that would have been required for the particular period had Defendants had an H-2A order operative during the time period.

(g)     Award Plaintiffs and Opt-In Plaintiffs pre and post-judgment interest as allowed by law;

(h)     Cast all costs upon Defendants; and

30

(i)      Award Plaintiffs, Opt-In Plaintiffs, and others similarly-situated such further relief, at law

or in equity, as this Court deems just and proper.

Respectfully submitted this _11th____ day of April, 2019,

_ s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
1003 Freedom Blvd.
Watsonville, CA  95076
Phone:  (404) 590-1295
dawson@dawsonmorton.com


*Attorney for Plaintiffs*