IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JESUS BEJINES-GONZALEZ, | ) | |
| ABRAHAAM SAYAGO-HERNANDEZ | ) | |
| And all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 7:19-cv-00055-HL |
| SOUTHERN VALLEY FRUIT & | ) | |
| VEGETABLE, INC.; HAMILTON | ) | |
| GROWERS, INC.; KENT HAMILTON; | ) | |
| HAMILTON FARMS MEX, L.P.; | ) | |
| HAMILTON PRODUCE, L.P.; | ) | |
| KENDA PROPERTIES, L.P.; WK | ) | |
| HOLDINGS, LLC; WK MEX | ) | |
| PROPERTIES, L.P.; and WKW, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION,
APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF THE
PARTIES' FLSA SETTLEMENT AND CLASS SETTLEMENT, APPROVAL OF
NOTICE PLAN, AND SCHEDULING OF FINAL HEARING**

Preliminary Statement

Plaintiffs Jesus Bejines-Gonzalez and Abrahaam Sayago-Hernandez are farm laborers who

worked for Defendants  Defendants Southern Valley Fruit & Vegetable, Inc.; Hamilton Growers,

Inc.; Kent Hamilton; Hamilton Farms Mex, L.P.; Hamilton Produce, L.P.; Kenda Properties, L.P.;

WK Holdings, LLC; WK Mex Properties, L.P.; and WKW, LLC ("Defendants") in Georgia

between 2013 and 2018 or 2017, respectively.  In April 2019 Mr. Bejines-Gonzalez and Mr.

Sayago-Hernandez ("Named Plaintiffs") filed the instant lawsuit alleging that, among other things,

they and other similarly-situated employees had not been paid overtime or properly reimbursed for

travel expenses when they worked for Defendants   The Named Plaintiffs and putative class members in this case are farmworkers who came to Georgia from Mexico through Defendants' use of the federal H-2A visa program to work in Defendants' packing shed operations, or are non-H2A workers who were employed in similar positions under the terms of an H-2A clearance order. [1]

The Parties have engaged in settlement talks over a period of months in an attempt to resolve their differences on the claims raised in Plaintiffs' Complaint.  Defendants provided Plaintiffs access to their Famous software computer system which allowed Plaintiffs' counsel to prepare reports and calculate potential alleged damages.  In March 2020, the Parties held a day-long in-person mediation in Atlanta with an experienced wage and hour mediator, Hunter Hughes. During the day-long mediation, the Parties exchanged further information to assist in determining a realistic settlement range. While the Parties did not reach a settlement agreement on the day of the mediation, nor after a post-mediation mediator's proposal, the Parties later reached agreement from a combination of the mediator's assistance and continued discussion among counsel.  The Parties' agreement resolves both the Rule 23 class claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and state law, and the Fair Labor Standards Act ("FLSA") claims.

The Parties now ask the Court to (1) conditionally certify the settlement class[2]; (2) appoint Plaintiffs' counsel as class counsel;  (3) approve the settlement of the FLSA claims; (4) grant preliminary approval to the Settlement Agreement (January 19, 2021 Decl. of Patricia Kakalec ("Kakalec Decl."), Ex. 1 (hereinafter "Agreement"); (5) approve the proposed Class Notice and

---

[1]  Non-H2A workers who perform the same work as is covered by an H-2A "clearance order" (which sets forth the terms of the H-2A workers' employment) must also be paid in accordance with the clearance order and the H-2A program prevailing wages.  20 C.F.R. § 655.122(a).
[2] Defendants consent to conditional and/or class certification for settlement purposes only, and would oppose class certification if the case continued to be litigated.

Notice distribution plan; and (5) schedule a final approval hearing.

For the reasons described below, the parties request that this Court grant the relief sought..

Background

As alleged in their First Amended Complaint, Plaintiffs brought this action claiming violations of FLSA minimum wage and overtime provisions, violations of the Migrant and Agricultural Worker Protection Act ("AWPA"), as well as common law claims for breach of contract and fraud. Plaintiffs' FLSA overtime claims, contract claims, and AWPA claims all arise from the written employment contract between the parties which promised compliance with federal wage laws. Plaintiffs' AWPA claims were focused on Defendants' failure to properly compensate putative class members at the promised contractual hourly rates. Plaintiffs alleged that Defendants were jointly and severally liable for the violations as joint employers and as an enterprise.

Plaintiffs filed their First Amended Complaint on June 12, 2019 which added two Plaintiffs, Margarito Osorio-Jimenez and Loida Osorio-Jimenez (the "Retaliation Plaintiffs"), who opted into the action and also asserted their own FLSA retaliation claims. In addition to the initial named Plaintiffs and to Mr. and Ms. Osorio-Jimenez, seven individuals opted into this action by filing a FLSA consent to sue form.

While the Parties held their Rule 26(f) conference in May 2020 and a scheduling order was entered into by the Court on August 7, 2020, the Parties focused their efforts in attempting to resolve this case, as noted above.

Plaintiffs allege liability which Defendants deny and dispute. Defendants believe their defenses would have prevailed while Plaintiffs, individually and on behalf of the Class, believe they could ultimately succeed at trial. Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

While the parties dispute the amount and extent of liability and damages owed, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and mediation and ultimately reached a Settlement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendants' defenses, and the benefits to be received by Class Members. Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair and reasonable.

Accordingly, the Parties now seek approval of the settlement under the following terms.

<u>Settlement Terms</u>

In summary (and as explained in more detail in Kakalec Decl., Ex. 1), the Agreement provides as follows:

(1)  Defendants shall pay a total gross settlement amount of $880,000 (the "Fund") in settlement of all claims. (Agreement ¶ 3.1)

(2)  Plaintiffs' Counsel will request an award of up to $237,600, or 27% of the Fund as an all-inclusive award of attorneys' fees, and request an award of up to twenty thousand dollars ($20,000) for out-of-pocket costs and expenses. (Agreement ¶ 3.4)

(3)  The Settlement Administrator Atticus Administration, LLC shall establish and administer an account to hold and distribute the Fund, and shall be paid from the Fund an amount estimated at no more than $25,000. (Agreement ¶¶ 2.14, 3.6)

(4)  Named Plaintiffs will request the Court award up to ten thousand dollars ($10,000) each as additional compensation in addition to any payment they may otherwise receive as Settlement Class Members.  Plaintiffs Loida Osorio-Jimenez and Margarito Osorio-Jimenez ("Retaliation Plaintiffs") request $10,000 and $7,000 respectively as compensation for their FLSA retaliation claims.   Each opt-in Plaintiffs will request

$1,500 in additional compensation for their claims. (Agreement ¶¶ 3.7 – 3.9)

(5) Plaintiffs Loida Osorio-Jimenez and Margarito Osorio-Jimenez will to be offered employment under the terms of an H-2A job order of at least eight months duration during the 2021 calendar year or 2022 calendar year. (Agreement ¶ 3.10)

(6) Jesus Bejines-Gonzalez, Abraham Sayago-Hernandez, Loida Osorio-Jimenez, Margarito Osorio-Jimenez and all Opt-in Plaintiffs will release Defendants, as defined in Paragraph 8.2 of the Agreement, from all wage claims and employment claims (including retaliation claims) through the date of the Agreement which arise from their employment with Defendants, with the exception that bodily injury torts, worker's compensation, and industrial injury claims will not be released. (Agreement ¶ 8.2)

(7) Class members will release Defendants, as defined in Paragraph 8.1 of the Agreement, from all causes of action, claims, losses, damages, and wages that were asserted in this action or which arise out of the factual allegations in the operative complaint, but not such claims that may not be waived under applicable state and federal including but not limited to claims arising from an industrial injury. (Agreement ¶ 8.1.)

(8) Any remaining funds, after redistribution to class members, will not revert to Defendants and will go to a cy pres recipient, the Migrant Clinicians Network, Inc., which works with farmworkers to improve access to health care.

<u>Argument</u>

I. <u>The Court Should Conditionally Certify the Settlement Class Here.</u>

"In deciding whether to preliminarily certify a settlement class, a court must consider the same facts that it would consider in connection with a proposed litigation class – i.e., all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied – except that the court need not

5

consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *Agnone v. Camden Cty., Georgia*, 2018 WL 4937061, at *2 (S.D. Ga. Oct. 10, 2018), *report and recommendation adopted*, 2018 WL 4937060 (S.D. Ga. Oct. 11, 2018) (citations omitted). For a court to certify a class action, "the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). That is, "every putative class must first satisfy the prerequisites of 'numerosity, commonality, typicality, and adequacy of representation.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003)). In this class action under Rule 23(b)(3), Plaintiffs must also show that common questions of law or fact predominate over questions affecting only individual class members, and that a class action is superior to other available methods for adjudicating the controversy.

The Parties here have agreed that a settlement class (the "Settlement Class") be defined as: "All individuals employed by Hamilton Growers, Inc. pursuant to the Job Orders set forth in paragraphs 78 through 90 of the First Amended Complaint and under the terms of an H-2A visa in a packing facility position, for the period of employment from April 11, 2013 through December 31, 2018." (Agreement, ¶ 2.15.) The referenced paragraphs in the First Amended Complaint referenced list the 18 job orders which covered the work performed by H-2A workers at Defendants' operations between 2013 and 2018.

The proposed settlement class here meets the requirements of Rule 23(a) in a settlement context because: (1) the approximately 150 potential class members per day per season are too numerous to be joined; (2) class members share a common interest in seeking redress for the violations of the AWPA and the breach of contract and fraud claims; (3) the Named Plaintiffs'

6

claims are typical of the settlement class members' interest in their AWPA and common law claims; and (4) the named Plaintiffs are adequate class representatives because they have no interests antagonistic to the settlement class's interests and they are represented by experienced counsel.

A.    Joining all members of the settlement class is impracticable.

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." The proposed settlement class meets that requirement, as the Parties have identified approximately 150 potential members per day per season of the Settlement Class.

"Although mere numbers are not dispositive in determining the numerosity requirement for class action certification, the general rule is that less than twenty-one class members is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted). Moreover, courts have found classes of less than 100 migrant workers to satisfy the numerosity prong of Rule 23(a). *See, e.g., Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *4 (E.D. Wis. June 11, 2014) (certifying class of 35 H-2B workers and citing cases certifying class actions of similar size); *Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 625 (M.D. Fla. 2010) (certifying class of 75 migrant farm workers).

Joinder is particularly impractical in cases, like this one, involving non-English speaking migrant workers who are geographically dispersed, have relatively small individual claims, and have little, if any, familiarly with the American legal system. *See, e.g., Ramirez* , 2014 WL 2612065, at *4 (finding joinder impracticable because "many of the class members are already identified, are located mostly in Mexico, have limited financial means, and present relatively small claims"); *Silva-Arriaga v. Tex. Express, Inc.*, 222 F.R.D. 684, 688–89 (M.D. Fla. 2004) (finding joinder impracticable for class of migrant workers from Mexico and Central America because of

geographic dispersion and lack of English proficiency and familiarity with the American legal system).

        B.      <u>There are questions of law and fact common to the Settlement Class.</u>

Rule 23(a)(2) requires that there be questions of law or fact common to the class. This in turn means that class members' claims "must depend upon a common contention." *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 350 2551 (2011). Here the proposed class meets the commonality requirement as the common issues of law predominate based upon a common nucleus of operative facts. The factual matters at issue here – predominately the type of work performed by class members, the expenses incurred by class members, – were common throughout the relevant time.

Legally, the issues are common to the class members as well. The question of whether Defendants' breached the employment contract is common to all class members. Similarly, the question of whether Defendant breached the AWPA working arrangement involves common legal analysis – both claims involve whether the H-2A clearance order constituted a contract, what the terms of the contract were, and whether there was a breach of such contract – across the class members. *Cordova v. R & A Oysters, Inc*., 2016 U.S. Dist. LEXIS 123040, at *4 (S.D. Ala. Sep. 12, 2016) (certifying settlement class contract claim where "[t]he named plaintiffs' contract claim is indistinguishable from that of every other class member; it arises from the same pattern or practice (not reimbursing migrant workers their travel and tool expenses), addresses the same elements of uncompensated expense, and asserts a single legal theory (breach of contract).") The question of whether Defendants are liable as employers of the members of the Settlement Class is an added common legal and factual issue.

C.     The Named Plaintiffs' claims are typical of those of the proposed class.

Rule 23(a)(3) requires that the "claims . . . of the representative parties [be] typical of the claims . . . of the class."  Commonality and typicality requirements under Rule 23 are interrelated and often merge.  *Dukes*, 131 S. Ct. at 2551.  Plaintiffs establish typicality when "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  A factual variation in the claims, however, "will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg*, 741 F.2d at 1337.

Here, the Named Plaintiffs worked for Defendants within the relevant time period.   Their claims related to inadequate pay and travel reimbursements have the same essential characteristics of the claims of other workers, as the Named Plaintiffs did the same work, packing and shipping produce, without overtime compensation and were paid in the same manner, in many cases under identical or nearly identical employment contracts.

When similar claims and facts are at issue, federal courts have commonly found typicality. *See, e.g., Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, at 378 (D.S.C. 2015) (certifying H-2B workers' contract claim as a class action and finding typicality where the "course of conduct that gives rise to the claims of other class members . . . [are] based on the same legal theor[ies]"); *Jimenez*, 2014 WL 2515398, at *6 (finding H-2B worker plaintiffs' typical of class based on employers' uniform actions); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 646 (M.D. Fla. 2012) (certifying H-2A workers' breach of contract claim as a class action).  Plaintiffs likewise meet the typicality requirement.

D.  The Named Plaintiffs and Class Counsel Will Fairly and Adequately Protect the
    Interests of the Proposed Class.

The adequacy of representation requirement is satisfied because the Named Plaintiffs'

interests are co-extensive with, and not antagonistic to, the interests of the Settlement Class and

because Plaintiffs have an interest in this case via their individual claims.  *See Dukes,* 131 S.Ct.

2541, 2551 (citations omitted).   The adequacy requirement requires two inquiries: "(1) whether any

substantial conflicts of interest exist between the representatives and the class; and (2) whether the

representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189.  "The

existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict

must be a 'fundamental' one going to the specific actions in controversy." *Id.*

Here, as discussed above, the Named Plaintiffs were packing shed employees for

Defendants who did the same work as the class members and who have no interests which differ

from the class members.  The Named Plaintiffs fit the class definition, have no conflict with the

class, and have no claims against Defendants other than those raised in the instant case.

Rule 23(a)(4) also requires adequacy of class counsel.  *See Valley Drug Co.*, 350 F.3d at

1189.  The proposed class counsel here, Dawson Morton and Patricia Kakalec, have significant

experience litigating farmworkers cases and class actions.  Plaintiffs' counsel, Dawson Morton, has

litigated numerous cases before this Court including cases involving these same Defendants.

*Franco-Hernandez v. S. Valley Fruit & Vegetable, Inc.*, 2015 U.S. Dist. LEXIS 13566 (M.D. Ga.

Feb. 5, 2015). They have been appointed class counsel in similar cases, and their work in this case

would result in a meaningful recovery for members of the settlement class. *See* Kakalec Decl. at ¶¶

8-9, Morton Decl. at ¶¶ 3.

E.     Rule 23(b)(3)'s Requirements are Satisfied.

In order to qualify for class certification, Plaintiffs must also show that they satisfy one of the requirements of Federal Rule of Civil Procedure 23(b).  *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).   Plaintiffs here meet the standards under 23(b)(3) because (1) common questions of law or fact predominate over individual questions; and (2) a class action represents a superior method for the fair and efficient adjudication of the controversy.   Fed. R. Civ. P. 23(b)(3).

1.     Predominance

Rule 23(b)(3)'s predominance inquiry considers "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc*, 521 U.S. at 623.  "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Klay*, 382 F.3d at 1255); *see also* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986) (predominance is met "when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for having the dispute on a representative rather than on an individual basis").

In this case, the common issues relate to pay (specifically, overtime pay) and unreimbursed travel expenses incurred by putative class members.  Defendants' practices with regard to these issues was consistent throughout the class, and thus these are all issues which can be resolved on a class basis.

2.    Superiority

Here, individual class members – all migrant farmworkers – are not likely to have an interest in instituting or controlling their own individual actions, in large part because of the difficulty this would pose for migrant farmworkers. *Cordova*, 2016 U.S. Dist. LEXIS 123040, at *7 (finding that "[a]s Mexican nationals and residents, with small claims and no fluency in English and limited familiarity with the American legal system, the class members have little interest in individually controlling the prosecution of separate actions.")

Moreover, the relatively small size of individual class members' claims substantially diminishes the interest of class members in controlling the prosecution of separate actions. For these reasons, courts have found that class litigation is superior in cases brought by migrant workers. *See, e.g., Jimenez*, 2014 U.S. Dist. LEXIS 75977, *34-35; *Garcia-Celestino*, 280 F.R.D. at 648-49; *Jean v. Torrese*, 278 F.R.D. 656, 663 (S.D. Fla. 2011).

In addition, manageability concerns favor the class action mechanism. Here, since Defendants allegedly violated the law with respect to approximately 150 employees per day per season, there are clearly no economical alternatives to a class action. The only way for class members to vindicate all their rights in this case would be through individual lawsuits, which would be inefficient for the class members, Defendants, and the Court.

F.    Clearly ascertainable class

Here also, the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). The class is defined in terms of objective criteria – workers who were employed by Defendant in the specified time period subject to specific job orders who performed specified jobs. The members of the class can easily be identified from Defendants' payroll records

and/or government records.

* * *

For all of these reasons, the Court should conditionally certify – for the purpose of the proposed class settlement – a class as provided in the Parties' Agreement.

II.    The FLSA Settlement Should Be Approved.

The proposed Agreement also resolves the FLSA claims of the Named Plaintiffs, Opt-ins, and class members, and the FLSA retaliation claims of the Retaliation Plaintiffs.

Under Eleventh Circuit law, a FLSA settlement is subject to review, approval and formal action by the Court.  *See Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  Here, the FLSA portion of the Agreement covers incoming transportation, return transportation and overtime payments, all of which were also part of the parties' employment contract and common-law contract claims.   Under the Agreement, Plaintiffs and the class members who worked for Defendants in 2016 and 2017 will receive approximately $100 per person per year for the unreimbursed travel expense claims. (Agreement ¶ 3.13.)  This amount is roughly full recovery of the value of these claims without liquidated damages, and as such is a fair and reasonable resolution of these claims.

Plaintiffs' overtime claims depend on the presence of outside, purchased, produce running through Defendants' packing shed during the weeks in which Plaintiffs and the class worked overtime without overtime compensation.  For these claims, Plaintiffs and the class are recovering approximately 25% of the full value of the claims as calculated by Plaintiffs' counsel.  However, Defendants dispute this claim, and Plaintiffs' counsel recognizes that Defendants might be able to successfully assert defenses to overtime liability for some or all workweeks, such as by arguing that

during certain time period workers did not pack produce from outside farms. That is, the full value of Plaintiffs claims would be lower, and the recovery here a higher percentage of their full value, were Defendants successful in establishing that they did not pack outside produce in certain or all work weeks. Additionally, the recovery provides for a full six years of claims under contract law significantly expanding the maximum of two or three years which would have been available under solely a FLSA claim. Significant differences existed regarding the merits and amounts owed for Plaintiffs' overtime claims and Plaintiffs believe the settlement amount adequately values the claims while addressing these litigation challenges.

The total amount of the settlement compares favorably to a judgment obtained against another large agricultural employer by the U.S. Department of Labor concerning similar overtime violations. *Acosta v. Bland Farms Prod. & Packaging, LLC*, 2019 U.S. Dist. LEXIS 202410, at *7-8 (S.D. Ga. Nov. 21, 2019) (entering judgment against "Defendant Bland Farms in the amount of $1,480,268.55, which represents the back wages and liquidated damages owed for the 2012, 2013, 2014, 2015, 2016, and 2017 Vidalia onion seasons").

Plaintiff Margarito Osorio-Jimenez, who brought a FLSA retaliation claim, would receive also $10,000 in damages for this claim and Loida Osorio-Jimenez, who also brought a FLSA retaliation claim, would receive $7,000 for her retaliation claim. These amounts roughly represent the value of the lost season of work that each retaliation plaintiff alleges occurred as a result of their participation in this litigation. In addition, to the lost wages, each is receiving a guaranteed position to return to work for Defendants for an additional season.

III. <u>Preliminary Approval of the Rule 23 Class Settlement on Behalf of the Settlement Class is Warranted.</u>

Rule 23(e) requires a Court to determine whether a settlement binding on class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When considering whether to

14

approve a class settlement, a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 5(e)(2).[3]

A court has broad discretion in reviewing a proposed class settlement. *See, e.g., In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). There is a strong policy and presumption in favor of class action settlements. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)); 4 Newberg on Class Actions § 11:41 ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."). A court should grant preliminary approval to authorize notice to the class upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B).

Considering the above factors and the terms of the Agreement, the Court should preliminarily approve the parties' proposed Agreement.

---

[3] Federal Rule 23(e) was amended effective December 1, 2018. The amendments are consistent with the Eleventh Circuit caselaw prior to amendment so caselaw from prior to December 1, 2018 is still relevant to the analysis here.

A.  The Class representatives and class counsel have adequately represented the class.

The Named Plaintiffs here have been active participants in this litigation and have acted to pursue the rights of all class members.   Named Plaintiffs have worked with Plaintiffs' counsel in developing facts, evaluating discovery, and drafting pleadings in this case.  They were active (but remote) participants in the March 2020 settlement conference and the settlement conversations which followed.  They also participated in locating documentary evidence and in developing Plaintiffs' damage calculations.

The actions of Plaintiffs' counsel similarly furthered the interest of the proposed Settlement Class.  After developing the facts and researching the law, Plaintiffs' counsel filed the Complaint and the Amended Complaint.  Plaintiffs' counsel thereafter reviewed class data and used arguments, evidence, and contractual documents to establish the strength of the claims and resolve them with Defendants' counsel.  Plaintiffs' counsel's efforts will lead to significant recovery for the class members if the Agreement is approved.

Plaintiffs' counsel believes that the Agreement between the Parties is in the interest of the class; the Court should consider this opinion in evaluating the Agreement.  *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) ("The Court should give 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel." ); *Agnone v. Camden Cnty., Ga.*, 2018 WL 4937061, at *5 (S.D. Ga. Oct. 10, 2018) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness").

B.  The settlement was negotiated at arms-length.

The Parties' settlement here is a reasonable resolution of a bona fide dispute in contested litigation.  This case was settled after review of electronic payroll records and mediation with an experienced mediator, and involved significant back and forth between counsel over a long period of time.  *See generally Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion.").  Additionally, the parties have significant litigation experience with each other and drew upon their knowledge of past litigation and past rulings in valuing and resolving this litigation.

C.  The relief provided for the class is adequate

The Settlement here, as described in the agreement and in the proposed notice, adequately compensates the class for their claims, with the amount received depending primarily on the amount of time a class member worked for Defendants, the seasons they worked in January and February for Defendants, and the jobs they performed.  Some class members will receive as much as $10,000, and no member of the Settlement Class will receive less than $50.

1.  The costs, risks, and delay of trial and appeal were likely to be significant.

Settlement of this case at this point will allow the parties to avoid the time and costs of additional litigation.  While Defendants have cooperatively produced access to their payroll data and class data, the Parties have not engaged in full-fledged discovery.  No depositions have taken place.  Additional litigation would greatly expand the cost of litigation while not necessarily improving the outcome for either party.   Travel would likely be required, and motions practice would be expected.  In short, even to get to the point of trial would likely take more than a year, and

if appeals followed a trial result, it could be several years before the class members saw any result. And of course, Defendants planned both summary judgment motions and opposition at trial, and were confident in their positions, and while Plaintiffs have confidence in their position, there is always a risk that Plaintiffs would not be successful at trial. Settling this case now will allow class members to recover their damages sooner, and without the risk of recovering nothing after trial.

2. <u>The method for distributing and processing class member claims is likely to be effective</u>.

The Agreement in this case takes into account the fact that most class members are in Mexico, and allows for methods of notice and distribution likely to successfully reach them. Plaintiffs have selected Atticus Administration, LLC to send the notice and administer the settlement in this action. Plaintiffs' counsel sought a settlement administrator who was able to send electronic payments, had experience working with Mexican laborers, and who was willing to undertake the engagement. Plaintiffs' counsel Dawson Morton regularly uses Atticus Administration, using them in approximately 15 engagements in the past two years involving either class notices, settlements, or other Court-authorized notice distribution.

Atticus Administration would provide notice to class members by mail, website, and WhatsApp electronic message where available. They would also use multiple methods for distribution of settlement funds including bank transfers, Western Union, and checks for those present in the United States, and to the extent any notices are required under the Class Action Fairness Act (CAFA), Atticus will prepare and file said notices.

3. <u>The proposed attorneys' fees are reasonable.</u>

The Supreme Court has expressed a preference that parties agree to the amount of the fee. "A request for attorney's fees should not result in a second major litigation. Ideally, of course,

litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The

Eleventh Circuit has indicated a preference for approving a percentage amount in common fund

settlements. *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)

("[T]he percentage of the fund approach is the better reasoned in a common fund case."). Here,

agreed-upon attorneys' fees are reasonable and support preliminary approval.

Under the agreement, Plaintiffs request an award of up to $237,600, or 27% of the

settlement fund; Plaintiffs also request out-of-pocket costs and expenses not to exceed $20,000.

The percentage is lower than the commonly-used one-third percentage and is consistent with

attorneys' fees approved in this Circuit. *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *5-6

(S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of

awards nationwide—roughly one-third"); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d

1356, 1382 (N.D. Ga. 2019) ("Courts within this Circuit have awarded attorney's fees of

approximately one-third of a common fund in FLSA and wage and hour cases"); Eisenberg,

*Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (median

award in 11th Circuit is 33 percent).

Considering the recovery to class members that Plaintiffs' counsel has achieved, this award

of fees provided for in the Agreement is reasonable.

    a.  <u>The proposed agreement treats class members equitably relative to each other.</u>

The Agreement treats class members equitably as to each other, with variances in amount

recovered dependent primarily upon the length of time that an employee worked for Defendants.

Under the Agreement,

- Each Settlement Class member employed in the packing shed under the terms of an H-

2A visa and each Opt-in Plaintiff employed under the terms of an H-2A visa pursuant to any H-2A job order in 2016 and 2017 calendar years shall receive a distribution of $100 for each season so employed as additional travel reimbursement;

- Each Settlement Class member employed in the packing shed after the expiration of the H-2A job order during the January – February time period for the calendar years 2014, 2015, 2016 and 2017 shall receive a settlement distribution of $175 in liquidated damages per season so employed; and

- The remaining settlement funds shall be distributed to each Settlement Class member based on the number of workweeks they performed work in a Packing Facility Position in Defendants' packing facility during the Class Period, as a proportion of all such workweeks of the Settlement Class Members during Class Period.

(Settlement, ¶ 3.13 – 3.14.)

The Agreement also provides a method by which class members may submit a written challenge to the Settlement Administrator if they disagree with the listed employment dates and/or the number of weeks worked based upon Defendants' records. (Id. ¶ 4.15.)

IV.     The Court Should Appoint Dawson Morton and Patricia Kakalec as Class Counsel

Both counsel for Plaintiffs have significant experience representing workers and specifically agricultural workers in collective and class actions. Plaintiffs' counsel Patricia Kakalec was formerly an attorney representing farmworkers in New York State. She is also the former Bureau Chief of the Labor Bureau in the New York Attorney General's office. Dawson Morton was formerly an attorney for agricultural workers at nonprofit organizations in both Georgia and California. Both counsel have served as lead counsel in class and collective actions for agricultural workers in federal court; Dawson Morton has been lead counsel for cases in the Eleventh Circuit

and in federal district courts in Georgia.

V.    The Court should approve the Notice, Plan and Plan Dates.

Federal Rule 23(c)(2)(B) sets forth requirement regarding the content of the notice.  The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

- the class claims, issues, or defenses;

- the right of the class member to enter an appearance through counsel if the member so desires;

- the fact that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

- the binding effect of a class judgment on class members under Rule 23(c)(3)

The proposed notice here meets these requirements. Under the Agreement, the Settlement Administrator shall send the Notice, along with an "Estimated Individual Settlement Allocation Form", in Spanish (with a web page link to the English and Spanish version), that describes the facts and methods used to calculate the Estimated Individual Settlement Allocation.  (Settlement ¶ 5.2.) The Settlement Administrator will send the Notice Packet using the information in the Class List, which includes the last known permanent address in Mexico, email addresses, WhatsApp account numbers, and telephone number(s).   (Settlement ¶ 5.1.)  In addition, the Settlement Administrator will create and host a web page where Settlement Class Members can obtain the Notice Packet or other information regarding the Settlement, and submit requests to the Settlement Administrator to

21

update any of their information, including their preferred method of payment. The web page address will be included in the Notice Packet. (Settlement, ¶ 5.3.)

The parties also request that the Court also set a hearing for final approval of the Class Settlement, no later than 140 calendar days after the date of Preliminary Approval, but at least 110 days after the date of Preliminary Approval, or as soon thereafter as there is availability on the Court's calendar. Pursuant to the proposed agreement, the parties would submit a Joint Motion for Final Approval at least 20 days prior to that hearing. These dates are set forward in the parties' Proposed Order, attached hereto as Exhibit 3.

<u>Conclusion</u>

For the reasons set forth above, the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the members of the Class. Plaintiffs therefore respectfully request this Court enter an Order Preliminarily Approving the Class Action Settlement which:

(i) Conditionally certifies the proposed class for the purpose of the parties' settlement, and approves the class representative and class counsel;

(ii) Preliminarily approves of the purposed settlement and the settlement class;

(iii) Approves and orders the Notice as set forth in the Settlement Agreement;

(iii) Sets dates for opt-outs, as provided in the Settlement Agreement and the proposed Order; and

(iv) Schedules a hearing for final approval of the class settlement.

Dated:
        January 22, 2021

s/ D. Morton

Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
1003 Freedom Blvd.
Watsonville, CA 95076
T: 404-590-1295
E: dawson@dawsonmorton.com

Patricia Kakalec
*Pro Hac Admitted*
Kakalec Law PLLC
195 Montague Street, 16th Floor
Brooklyn, NY 11201
T: 212-705-8730
E: patricia@kakaleclaw.com